UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS FLUCKES, # 343656

    Petitioner,

v.

DEBRA SCUTT,

    Respondent.
                                  /

Case No. 08-cv-13938

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS
CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

Petitioner Dennis Fluckes has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges on two grounds his conviction in state court of felonious assault: 1) ineffective assistance of trial counsel; and 2) insufficiency of the evidence. For the reasons stated below, the Court will deny the petition.

**BACKGROUND FACTS**

Fluckes's conviction arose out of an altercation at his home on June 27, 2005. The following testimony was offered at trial.

Robyn Guillette, Fluckes's step-daughter, testified that she arrived at her mother and step-father's home, along with her sister (Renee Gillette), Renee's boyfriend, and Robyn's two year-old daughter, to use the swimming pool. Trial Tr. 120. While inside, just after arriving, Robyn heard her mother, Renee, and Fluckes arguing and yelling outside. *Id.* at 122. Robyn went outside to see what was the matter. *Id.* at 123-24. She heard Fluckes and Renee call each other a "bitch." *Id.* at 124-25. Fluckes then picked up a golf club, held it in the air, and told those present that, "people were going to learn to respect him in his house no matter what he had to do," and that if he were not respected, he would "have to

take our heads off." *Id.* at 126-27. Fluckes was standing about seven feet from Robyn and three feet from Renee when he said this. *Id.* at 128. Robyn testified that Renee was not holding any object in her hands at the time. *Id.* at 125.

Robyn went inside to call the police. *Id.* at 132. After doing so, she came back outside and saw Renee screaming, standing beside Robyn's car, holding her leg. *Id.* at 135. Renee told Robyn that Fluckes had just slammed the car door on her leg. *Id.* at 136. Robyn testified that, again, Renee was not holding any object in her hands at the time. *Id.* at 137. Robyn positioned herself between Renee and Fluckes and told Fluckes – who was still holding the golf club – that he was not going to hit anyone anymore. *Id.* at 136-37. Fluckes responded that he would "crack [Robyn's] head too if you don't like what goes on in my house." *Id.* at 138. Fluckes then swung the golf club at Robyn's head "like you'd swing a baseball bat." *Id.* at 139. Afraid Fluckes was going to hit her, Robyn leaned back to avoid the club. *Id.* at 141. She had nothing in her hands at the time, and had not touched Fluckes. *Id.* Fluckes's bother, Jeremiah, was able to remove Fluckes from the situation, at which time Robyn went back inside to call the police for a second time. *Id.* at 143.

While on the phone with the police, Robyn looked for "something to . . . maybe stop [Fluckes]." *Id.* at 144. She picked up a small kitchen knife to bring outside, but her mother prevented her from leaving the house with it. *Id.* at 154. When Robyn came back outside, Fluckes was sitting in his wife's truck, still yelling at Renee and Robyn. He said he was "not to be played with. He's not for any games and he said I'll kill all you bitches if I have to." *Id.* at 146. When Robyn told him to wait a couple of minutes (for the police to arrive), Fluckes got out of the truck and quickly walked toward her, holding the golf club like a baseball bat. *Id.* at 147-48. Around this time, the police arrived and ordered Fluckes to

drop the golf club, which he eventually did. *Id.* at 149.

Officer Robert LeCouffe testified that he was dispatched to Fluckes's home the day of the altercation. *Id.* at 178. When he arrived, he saw Fluckes swinging a golf club back and forth, like a baseball bat, in the direction of "two to three females" in the yard. *Id.* at 180-81. The women were trying to hide behind a car. *Id.* at 182. LeCouffe ordered Fluckes to drop the golf club. Fluckes told LeCouffe he was not the aggressor and was just trying to defend himself. *Id.* at 183. LeCouffe testified that he believed Fluckes to be the aggressor based on what he saw when he arrived at the home. *Id.* He arrested Fluckes for felonious assault. *Id.*

Officer Patrick Theriault testified that he was dispatched along with Officer LeCouffe. *Id.* at 192. He also witnessed Fluckes swinging the golf club like a baseball bat in the direction of two women, who were trying to retreat behind a parked car. *Id.* at 194-95. Theriault assisted in arresting Fluckes and searching his person before transporting Fluckes to the police station. *Id.* at 197.

When the prosecution rested its case, Fluckes moved for a directed verdict, arguing that the prosecution failed to prove that Fluckes acted with intent. *Id.* at 203. The court denied the motion, and the defense began its case. *Id.*

Fluckes's wife, Denise, testified that Renee, Robyn, and Fluckes were arguing outside. *Id.* at 213. She witnessed Renee throw a child's scooter and a table toward Fluckes, and saw Fluckes pick up a golf club. *Id.* at 213-14. She testified that she took the kitchen knife away from Robyn while in the home. *Id.* at 217, 224. She did not see Robyn and Renee hide behind a car to avoid being hit with a golf club. *Id.* at 218, 224

Jeremiah Barlow, Fluckes's brother, testified that he lived with Fluckes and Denise, and was present during the altercation. *Id.* at 227. He stated that he tried to get Fluckes

3

to leave the home at that time to avoid the situation. *Id.* at 228. He also stated that Renee and Robyn threw a children's scooter and a table in Fluckes's direction. *Id.* at 230. He testified that he never saw Fluckes swing a golf club at any person. *Id.* at 231-32.

When the defense rested, defense counsel requested that the jury be instructed on the alternative, lesser included offense, of simple assault, but the request was denied as the court found no evidence to support the instruction. *Id.* at 269.

The jury returned a verdict of guilt after no more than 30 minutes of deliberation. *Id.* at 268-69.

Fluckes was sentenced to 18 months to 15 years in prison for the felonious assault and for being a fourth habitual defender.

## PROCEDURAL HISTORY

Petitioner filed a delayed application for leave to appeal his conviction in the Michigan Court of Appeals, asserting the following claims:

I. Mr. Fluckes was denied a fair trial, due process and effective assistance [of] counsel when the jury never considered Mr. Fluckes' self-defense theory when defense counsel did not request, nor did the trial court provide the jury with a self-defense instruction when the evidence supported this instruction, which violated Mr. Fluckes' federal and state constitution rights, U.S. Amend. IV, V, VI, XIV; Mich Const 1963, Art. 1, Sec. 17, 20.

IA. When Mr. Fluckes' trial attorney did not request a jury instruction on self-defense when the evidence supported it with Mr. Fluckes [sic] own statement to the police and his witnesses, he was denied effective assistance of counsel under the Sixth Amendment of US Const, Mich Const 1963 Art 1, Sec 17, 20.

II. Since there was insufficient evidence to convict Mr. Fluckes of felonious [assault] because he did not intend to assault the complainant and where he acted in self-defense, this court must reverse his conviction pursuant to the federal and state constitutions, US Amend V, VI, XIV; Mich Const, Art 1, Sec 17, 20 and People v. Hampton, 407 Mich 354 (1979), and In Re Winship, 397 US 3587 (1970).

4

The Michigan Court of Appeals denied the delayed application in a summary order "for lack of merit in the grounds presented." *People v. Fluckes*, No. 274203 (Mich. Ct. App. May, 11 2007). Fluckes sought leave to appeal in the Michigan Supreme Court, which denied the application because it was "not persuaded that the questions presented should be reviewed by this Court." *People v. Fluckes*, No. 134203 (Mich. Sept. 10, 2007).

Fluckes then filed the instant petition, presenting the following claims: 1) trial counsel was ineffective for failing to present a theory of self defense and for failing to request a jury instruction on self-defense; and 2) the evidence was insufficient to support the verdict.

**ANALYSIS**

I. <u>Legal Standard</u>

"On collateral review, the amount of deference paid to a state court varies based on the nature of that court's ruling." *Miller v. Stoval*, 608 F.3d 913, 918 (6th Cir. 2010). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), where a state court adjudicates a claim on the merits, a federal court can grant the writ only if the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d); *see Miller*, 608 F.3d at 918.

When a state court does not address the merits of a claim properly raised in a habeas petition, however, AEDPA's deferential standard of review does not apply. *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) (citing *Williams v. Coyle*, 260 F.3d 684, 706 (6th Cir. 2001)). Instead, a federal habeas court applies pre-AEDPA standards, and

5

reviews de novo questions of law and mixed questions of fact and law.  *Id.*  A state court's factual findings are presumed true and must be shown false by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Without argument, Respondent presumes AEDPA's deferential standard of review applies here.  The Court disagrees.  The Michigan Court of Appeals summarily dismissed Fluckes's delayed application for appeal "for lack of merit in the grounds presented."  The Michigan Supreme Court denied Fluckes's application for leave to appeal in a one sentence summary order.  As the Supreme Court recently stated in *Halbert v. Michigan*, 545 U.S. 605 (2005), while the phrase "lack of merit in the grounds presented" "necessarily entails some evaluation of the merits of the applicant's claims[,]" the disposition "may not be equivalent to a 'final decision' on the merits, *i.e.*, the disposition may simply signal that the court found the matters asserted unworthy of the expenditure of further judicial resources."  *Id.* at 618.

The Sixth Circuit recently considered the meaning of a decision from the Michigan Court of Appeals dismissing "for lack of merit in the grounds presented" an application for delayed appeal that is later followed by a denial of leave to appeal by the Michigan Supreme Court for not being "persuaded that the questions presented should be reviewed by this Court."  Following and making more express a portion of its earlier decision in *McAdoo v. Elo*, 365 F.3d 487, 498 (6th Cir. 2004), and rejecting an attempt to unduly expand statements made by the Supreme Court in *Halbert*, the Sixth Circuit in *Dorn v. Lafler*, 601 F.3d 439, 443 (6th Cir. 2010) held that, "[b]ecause the state court may have various reasons for denying an application for leave to appeal 'for lack of merit in the grounds presented,'" none of which are made express in a summary order, federal courts cannot "discern from that language alone whether that decision was based on the merits

6

of the case" and cannot "conclude that [the decision] was an 'adjudication on the merits' pursuant to 28 U.S.C. § 2254(d)." *Id.* Applying the pre-ADEPA standard of review, the Sixth Circuit reviewed the petitioner's properly presented habeas claim de novo. *Id.*

In light of *Dorn* and *McAdoo*, and because the Court cannot conclude here that the Michigan Court of Appeals or Supreme Court adjudicated Fluckes's claims on the merits, the Court must review his properly presented habeas claims de novo.

II. Analysis

Fluckes raises two claims in his petition. He argues first that he was denied the effective assistance of counsel and a fair trial when his court-appointed attorney failed to develop a theory of self-defense at trial, and then failed to request a jury instruction on the defense. He argues second that the evidence was insufficient to support the jury's verdict.

A. Ineffective Assistance of Counsel

1. Clearly Established Law

The Sixth Amendment to the U.S. Constitution provides, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence." U.S. Const. amend. VI. This specific right protects the more general and fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 684 (1984). The Constitution defines the basic elements of the fair trial guaranteed by the Due Process Clauses largely through the Sixth Amendment. *Id.* at 685. The right to counsel plays a "crucial role" in ensuring a fair trial because of the adversarial nature of our justice system. *Id.* Accordingly, the right to counsel includes not only the right to the presence at trial of a "person who happens to be a lawyer," but also the right to the "effective assistance of counsel." *Id.* at 686 (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970)).

A claim that counsel was so ineffective as to render the trial unfair and the conviction infirm has two components. *Id.* at 687. First, the defendant must show that counsel's performance was "deficient," meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, the defendant must show that the deficient performance prejudiced the defense, meaning that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

With respect to the performance prong, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner must "overcome the strong presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (citation omitted). In attempting to do so, the petitioner must identify the acts or omissions allegedly not the result of reasonable professional judgment. *Id.* at 690. The court must then determine whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*

With respect to the prejudice prong, the petitioner must "affirmatively prove" that his attorney's errors at trial "actually had an adverse effect on the defense." *Id.* at 693. He must show more than that the error had some "conceivable effect on the outcome of the proceeding," but less than that counsel's deficient conduct "more likely than not altered the outcome of the case." *Id.* Rather, the petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The central question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable

8

doubt respecting guilt." *Id.* at 695. A verdict that is strongly supported by the evidence is less likely to have been affected by errors than one with little support for it. *See id.* at 696.

2. Application

Fluckes contends that his lawyer was ineffective for failing to present a theory of self-defense and for later failing to request a jury instruction on the defense.

Fluckes's claim fails on both *Strickland* prongs. With respect to the performance prong, a self-defense theory was not a viable defense in this case, so counsel was not deficient in failing to raise the defense and request an instruction.[1] "At common law, the affirmative defense of self-defense justifies otherwise punishable criminal conduct, usually the killing of another person, 'if the defendant honestly and reasonably believes his life is in imminent danger or that there is a threat of serious bodily harm and that it is necessary to exercise deadly force to prevent such harm to himself.'" *People v. Dupree*, 486 Mich. 693, 707 (2010) (quoting *People v. Riddle*, 467 Mich. 116, 127 (2002)). Generally speaking,

> "[o]ne who is not the aggressor in an encounter is justified in using a reasonable amount of force against his adversary when he reasonably believes (a) that he is in immediate danger of unlawful bodily harm from his adversary and (b) that the use of such force is necessary to avoid this danger."

*Id.* (quoting 2 LaFave, Substantive Criminal Law (2d ed.), § 10.4, p. 142).

---

[1] Although defense counsel mentioned in opening statements that "Mr. Fluckes probably had to defend himself," Trial Tr. 113, and the prosecutor briefly alluded to self-defense in his closing, *see id.* at 242, there was never a development of the theory at trial, and defense counsel never argued in closing that Fluckes acted in self-defense or requested an instruction on the elements of the defense. Rather, the defense theory was that the prosecution's witnesses should not be believed, and that Fluckes never swung the golf club at Robyn.

9

The criminal charge in this case arose out of Fluckes's decision to swing a golf club at Robyn when she was standing between him and Renee. *See* Trial Tr. 109 ("[T]he defendant took this golf club and swung it at Robyn's head and . . . she went back. . . . Ladies and gentleman, that is what is called a felonious assault."); *id.* at 243 ("The most important [felonious assault,] *which is the one which he is charged with*[,] is when Robyn steps in between him [and Renee] and says as she's crying telling you you're not hitting anybody. You're not hitting my sister." (emphasis added)). This event occurred *after* Renee and Robyn allegedly threw the scooter and table in Fluckes's direction.² Robyn was standing between Fluckes and Renee with nothing in her hand. *Id.* at 141. Robyn testified that she told Fluckes that he was not going to hit anyone anymore. *Id.* at 136-37. After Fluckes responded that he would "crack [Robyn's] head too if you don't like what goes on in my house," *id.* at 138, he then swung the club at Robyn's head "like you'd swing a baseball bat." *Id.* at 139. Robyn leaned back to avoid being hit. She testified that she was afraid Fluckes was going to hit her. *Id.* at 141. In light of this evidence, there is nothing to support Fluckes's claim that he had a viable theory of self-defense. Specifically, there is no evidence upon which a jury could conclude that Fluckes swung the club at Robyn's head only because he "honestly and reasonably believed" that doing so was necessary to prevent his imminent death or serious bodily harm.³

---

² There is no evidence that the scooter and table, even if they were thrown, ever hit Fluckes.

³ Fluckes is not entitled to an evidentiary hearing to demonstrate what facts he could have produced in support of a theory of self-defense, because he failed to develop these facts in his state court proceedings. *See* 28 U.S.C. § 2254(e)(2). A petitioner "has failed to develop" a factual basis of a claim in state court where there is "a lack of diligence, or some greater fault attributable to the prisoner or the prisoner's counsel." *Michael Williams v. Taylor*, 529 U.S. 420, 432 (2000). Diligence requires that the prisoner "at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437. In Michigan, to develop the factual basis for a claim not already developed, a

10

To be sure, Robyn did testify that she attempted to bring a knife outside to persuade Fluckes to calm down. But Fluckes never saw the knife, as Denise prevented Robyn from ever bringing it outside. Robyn's brief possession of a kitchen knife inside the home, which Fluckes never saw, would not have supported a self-defense theory.

Precisely because of the lack of evidence supporting a theory of self-defense, counsel's decision not to develop the theory was a sound trial strategy. To invoke the theory, Fluckes would have had to admit that he swung the club at Robyn, and then argued that he did so because he reasonably and honestly believed he was in danger of imminent, unlawful use of force by Robyn. *See Dupree*, 486 Mich. at 707 ("A finding that a defendant acted in justifiable self-defense necessarily requires a finding that the defendant acted intentionally, but that the circumstances justified his actions."). Rather than admit the factual basis for the assault, counsel chose to structure the defense around impeaching Robyn's testimony, and arguing that Fluckes never swung the club at Robyn. *See* Trial Tr. 251-52. This is primarily why the defense called Denise and Jeremiah to testify. Given the

---

defendant must file a motion for a new trial and evidentiary hearing in the trial court or a motion to remand in the court of appeals. *See People v. Ginther*, 390 Mich. 436, 443-44 (1973). Although Fluckes briefly asked in the last sentences of his applications that the Michigan appellate courts remand his case for a hearing to develop additional facts to support the claims raised therein, the requests were not made in "the manner prescribed by state law." Michigan Court Rule 7.211(C)(1) requires that a motion for remand be supported by an affidavit or offer of proof regarding the facts to be established at a hearing, neither of which Fluckes included in his applications. *See* Mich. Ct. R. 7.211(C)(1). Accordingly, he is barred by § 2254(e)(2) from obtaining an evidentiary hearing in federal court. *See also Strayhorn v. Booker*, 718 F. Supp. 2d 846, 871 n.3 (E.D. Mich. 2010) (finding that petitioner failed to develop the factual basis for his habeas claim where he failed to file a motion for an evidentiary hearing in state proceedings, and for that reason, denying request for evidentiary hearing); *Ware v. Harry*, 636 F. Supp. 2d 574, 593 (E.D. Mich. 2008) (finding petitioner was entitled to evidentiary hearing where he filed motion to remand in Michigan Court of Appeals and supported motion with affidavit detailing conversations with counsel regarding trial strategy, and state court denied motion on merits, not procedural grounds).

11

lack of evidence to support a self-defense theory, and the conflicting testimony regarding whether Fluckes swung the club at Robyn, along with the evidence of Robyn's bias against Fluckes, *see* Trial Tr. 153-55, 250, pursuing a general lack of evidence defense was arguably the better course in this case. And even if it was not the best defense in hindsight (which it was), the decision to assert it did not fall "outside the wide range of professionally competent assistance" to which Fluckes was entitled. *Strickland*, 466 U.S. at 690.

In addition, because it was reasonable not to pursue a theory of self-defense, and because the evidence at trial did not support the theory, defense counsel also was not deficient for failing to request a jury instruction on self-defense. A defendant is entitled to have instructions given only if the evidence supports them. *See People v. Hawthorne*, 474 Mich. 174, 182 (2006); *see also Mathews v. United States*, 485 U.S. 58, 63 (1988) ("As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor."). Counsel is not deficient for not making a meritless request at trial.

Fluckes's Sixth Amendment claim also fails for the independent reason that he cannot establish any prejudice from counsel's decision not to pursue a self-defense theory and request an instruction. He points to no facts he could have offered at trial to support a self-defense theory, and, for the reasons stated above, *see supra* note 4, he is not permitted to develop the facts in an evidentiary hearing in this Court. Thus, the Court must consider the record as it was developed at trial to determine whether the existence of argument and an instruction would have changed the result.

Considering the overwhelming evidence of guilt offered at trial, even had defense counsel argued a theory of self-defense in closing and requested an instruction on self-defense from the court, the trial court would have refused to give one. And even if it did,

12

the end result would not have been any different. The jury returned a guilty verdict after only 30 minutes of deliberating, suggesting that the jury found ample evidence of guilt from the testimony, and would not have credited any self-defense theory. Therefore, the Court finds no reasonable probability that the result in this case would have been different had counsel pursued a theory of self-defense, argued the theory in closing, and requested an instruction on the defense.

Since Fluckes has failed to demonstrate that his counsel performed deficiently and that the deficiency prejudiced him, he is not entitled to habeas relief on his claim of ineffective assistance of counsel.[4]

B. Insufficiency of the Evidence

Fluckes contends that the prosecution failed to prove its case beyond a reasonable doubt. Again, because it is not clear that the Michigan Court of Appeals and Michigan Supreme Court addressed this claim on the merits, the Court reviews the claim de novo.

1. Clearly Established Law

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review applied here, the question a federal court must answer is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

---

[4] Fluckes also claims he was denied a fair trial in violation of the Due Process Clause. This claim is duplicative of the Sixth Amendment ineffective assistance claim and fails for the same reasons. *See also Strickland*, 466 U.S. at 685 ("The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause . . . .").

beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). A court must consider all of the evidence in the light most favorable to the prosecution. *Id.* It may not make credibility determinations, *see United States v. Bailey*, 444 U.S. 394, 414-55 (1980), and the existence of contradictory testimony does not mean the evidence of guilt is insufficient, only that the jury must make credibility determinations, *Gov't of the Virgin Islands v. Isaac*, 50 F.3d 1175, 1179 (3d Cir. 1995). The Court must presume that the jury resolved conflicts in the evidence in favor of the prosecution and defer to that resolution. *See Jackson*, 443 U.S. at 326.

2. Application

"The *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16). The elements of felonious assault are: 1) assault; 2) with a dangerous weapon; and 3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery. *People v. Avant*, 235 Mich. App. 499, 505 (1999); *see also* Mich. Comp. Laws § 750.82(1). A dangerous weapon includes, but is not limited to, a gun, revolver, pistol, knife, iron bar, club, or brass knuckles. Mich. Comp. Laws § 750.82(1). An assault is either an attempt to commit battery or an "unlawful act which places another in reasonable apprehension of receiving an immediate battery." *People v. Starks*, 473 Mich. 227, 234 (2005). A battery is an intentional, unconsented, and harmful or offensive touching of another person. *Id.*

Fluckes contends that the evidence failed to establish that he used a golf club to assault Robyn, but rather established that he acted in self-defense. But a jury could have reasonably found otherwise. Viewing the evidence in the light most favorable to the prosecution and crediting Robyn's testimony, the facts were as follows: Robyn was

14

standing between Fluckes and Renee with nothing in her hands when Fluckes said he would "crack" her head (demonstrating intent), and swung a golf club at her head "like a baseball bat." To avoid being hit, Robyn had to move her head backwards. She was afraid she was going to be hit. Considering this evidence, a jury could have found beyond a reasonable doubt that Fluckes, with a dangerous weapon (a club), intended to batter Robyn. Further, as the Court has already stated, there is no evidence that would have supported a finding of self-defense.

Accordingly, Fluckes's claim that the evidence was insufficient to support the jury's verdict is without merit.

III. Certificate of Appealability

In order to appeal a district court's denial of habeas petition, the petitioner must obtain a certificate of appealability from the district court or circuit court. 28 U.S.C. § 2253(c)(1)(A). By statute, a certificate of appealability may issue only if the petitioner has made a "substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To make a "substantial showing," a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Specifically, a petitioner must "'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Banks v. Dretke*, 540 U.S. 668, 705 (2004) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)).

The Court concludes that reasonable jurists could not debate the correctness of its resolution of Fluckes's claims. On the ineffective assistance claim, it is beyond debate that the facts in the case could not support a theory of self-defense, so counsel was not

ineffective for failing to develop the theory and request an instruction on it. A lack of any showing of prejudice independently defeats Fluckes's Sixth Amendment claim as well. With respect to the insufficiency of the evidence claim, it is beyond debate that the evidence was sufficient to support the jury's guilty verdict on the charge of felonious assault. Accordingly, the Court declines to issue a certificate of appealability on any of Fluckes's claims. He is free to request one from the Sixth Circuit.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court **DECLINES** to issue a certificate of appealability on any issue raised in the petition.

**SO ORDERED.**

                    s/Stephen J. Murphy, III
                    STEPHEN J. MURPHY, III
                    United States District Judge

Dated: December 14, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 14, 2010, by electronic and/or ordinary mail.

                    s/Alissa Greer
                    Case Manager